**GARCIA, Emilio, Appellant,**

v.

**SCHWEIKER, Richard S., Secretary Department of Health and Human Services.**

**Nos. 83-1786, 87-1084.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Aug. 18, 1987.

Decided Sept. 21, 1987.

Edward S.G. Dennis, Jr., U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Chief, Civil Div., E.D. Pa., Beverly Dennis, III, Chief Counsel, Region II, Charlotte Hardnett, Supervisory Asst. Regional Counsel, and Collette A. Pete, Asst. Regional Counsel, Dept. of Health and Human Services, Philadelphia, Pa., for appellee.

Eric J. Fischer, Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Before GIBBONS, Chief Judge, and WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Emilio Garcia, by his counsel, Community Legal Services, Inc. of Philadelphia (Community Legal Services) applies to this court under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (Supp. III 1985) (EAJA) for an award of attorneys' fees for the appellate work performed on this case. Appeal No. 83–1786. Community Legal Services also appeals from an order awarding attorneys' fees under the EAJA for work performed in the district court. Appeal No. 87–1084. Garcia, an applicant for disability insurance benefits under the Social Security Act, was initially denied such benefits by the agency and the district court. We vacated and remanded the matter to the Secretary, who again found Garcia not disabled. The matter was presented again to the district court, whereupon Garcia was awarded disability benefits on the basis that he suffered from severe phlebitis and mental impairment.

Thereafter, Community Legal Services filed in the district court for attorneys' fees under the EAJA for 26.75 hours of work performed before that court. The district

court found that Garcia was a prevailing party, that the Secretary "had little, if any, support in the record" for denying Garcia's claim and that the agency had failed to establish substantial justification for its position. Accordingly, the district court awarded $75.00 an hour for 26.75 hours of legal services. The district court declined, however, to award an enhanced fee based on special factors or cost of living increases since 1981. We will reverse the judgment on the cost of living claim and affirm on the special factors claim. With respect to Appeal No. 83-1786, we conclude that Community Legal Services is entitled to attorneys' fees under the EAJA for 8.5 hours of appellate work at the rate of $75.00 an hour, adjusted for inflation since the statutory rate was fixed in 1981.

## I.

Community Legal Services filed simultaneous fee petitions before the district court and this court for work performed before each respectively. Both petitions raise identical or related issues but request different monetary awards. The Secretary objects to the filing of concurrent petitions, arguing that bifurcated consideration results in protracted and duplicative litigation.[1] In response, Community Legal Services explains that separate applications were filed in light of *Stokes v. Bowen*, Civ. No. 82-5124 (E.D.Pa. July 17, 1986). [Available on WESTLAW, DCT database] In *Stokes*, the same district judge as in the present case declined to consider hours expended on the appeal, stating that "[t]he determination as to whether a position taken by the Secretary was justified is best made by the court before which the Secretary took that position." *Id.*, slip op. at 3 (citing *Washington v. Heckler*, 608 F.Supp. 1286, 1287-89 (E.D.Pa.1985).

We have since reversed, however, and remanded the *Stokes* case to the district court, directing it to calculate and award attorneys' fees under the EAJA for work performed on the trial and appellate levels. *See Stokes v. Bowen*, 811 F.2d 814, 817 (3d Cir.1987). In doing so, we repeated the Third Circuit position that " '[w]e perceive no reason why the district court should not set the fees for work in both courts when representation in each was required. That practice reduces the time and effort required of counsel and also simplifies judicial oversight of the process.' " *Id.* (quoting *Guido v. Schweiker*, 775 F.2d 107, 110 (3d Cir.1985)). *Accord Brinker v. Guiffrida*, 798 F.2d 661, 669 (3d Cir.1986).

The present case is a perfect example of the waste of judicial economy which results when petitions are filed separately in different courts. The district court below considered the exact issues raised in the first instance before this court. At one point, two separate motions—the appeal from the district court's decision and the fee petition for appellate work—were pending before this court and were eventually consolidated by this court *sua sponte*. Clearly, judicial resources could have been saved if both petitions were filed in the district court. Any appeals from the judgment below would have then come up together, thereby insuring uniform appellate consideration. Since we must review the district court decision in connection with the trial hours, however, we will now also entertain the fee petition for appellate hours.

## II.

Community Legal Services applies under the EAJA for an award of attorneys' fees for the time it expended on appeal. A prevailing party is entitled to attorneys' fees under the EAJA "unless the court finds that the position of the United States was substantially justified or that special circumstances made an award unjust." 28

---

**1.** Neither the EAJA nor the Third Circuit Rules lend any guidance on this issue. The EAJA is silent on whether the district court or the court of appeals should consider fee petitions in connection with appellate work. Rule 27 of the Third Circuit merely establishes the procedure for filing applications for attorneys' fees awards

U.S.C. § 2412(d)(1)(A).[2] Since it is undisputed that Garcia is a prevailing party, the only issue that we must consider in determining if Community Legal Services is entitled to an award for attorneys' fees under the EAJA is whether the government has met its burden of proving substantial justification. *See Dougherty v. Lehman*, 711 F.2d 555, 562 (3d Cir.1983).

In order to prevail, the government must show: 1) a reasonable basis in truth for the facts alleged; 2) a reasonable basis in law for the theory it propounded; and 3) a reasonable connection between the facts alleged and the legal theory advanced. *Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir.1985) (citing *Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584, 593 (3d Cir.1984)).[3]

■ The Secretary contends that its initial decision to deny benefits and to defend that denial was reasonable both in law and fact because there was no record evidence that Garcia suffered from a severe mental impairment, that he was treated for a disabling leg impairment or that Garcia's phlebitis imposed significant functional limitations. The fact of the matter is, however, that the agency's position clearly offended established precedent. Indeed, in considering the appeal from the denial of Garcia's

disability benefits, we vacated the district court's judgment affirming the agency determination and remanded to the Secretary because the agency had failed to conform to established precedents. *See Garcia v. Heckler*, 745 F.2d 46 (3d Cir.1984) (per curiam).[4]

Moreover, on remand, the Secretary continued to disregard this court's directives. In the final decision on the merits, the district court found, *inter alia*, that 1) despite the fact that the agency's final administrative decision conceded that Garcia suffered from severe phlebitis, the ALJ continued to conclude that Garcia was not disabled and the Secretary still maintained in the district court that the phlebitis was not severe; 2) despite uncontradicted medical evidence, the ALJ continued to find, without explanation, that Garcia's allegations of severe pain were not credible; 3) the agency failed to consider possible psychological problems for the period prior to December 31, 1978 despite our 1984 mandate and despite uncontested medical testimony to the contrary; and 4) the vocational "grids" continued to be incorrectly applied. *See Garcia v. Bowen*, No. 83–1453, Bench Opinion dated Dec. 15, 1986.

Clearly, throughout the course of this litigation, the Secretary failed to consider probative medical evidence, rejected several

---

"relating to a case filed in this court." 3d Cir.R. 27 (as amended Jan. 1, 1987).

**2.** As we explained in *Natural Resources Defense Council, Inc. v. U.S.E.P.A.*, the "position" of the United States refers not only to its litigation position but also to the position it took which made it necessary for the party to file suit. *See* 703 F.2d 700, 708 (3d Cir.1983).

**3.** Although the Secretary urges that substantial justification should be judged under a reasonableness standard, something less than a substantial evidence standard, we disagreed with that position in *Stokes*, 811 F.2d at 815–16. "Substantial justification 'constitute[s] a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous.'" *Washington v. Heckler*, 756 F.2d at 961 (quoting *Dougherty*, 711 F.2d at 563).

**4.** Specifically, in that memorandum decision, we found that:
(1) The ALJ "failed to note, much less discuss" various probative medical reports which specifically contradicted his findings, in contra-

vention of *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1155 (3d Cir.1983) (per curiam); *Van Horn v. Schweiker*, 717 F.2d 871, 873–74 (3d Cir.1983); *Kent v. Schweiker*, 710 F.2d 110, 114–15 (3d Cir.1983).
(2) The ALJ rejected in a conclusory manner, without explanation, Garcia's allegations of severe pain in violation of *Taybron v. Harris*, 667 F.2d 412, 414–15 (3d Cir.1981) (per curiam); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir.1978).
(3) The ALJ ignored Garcia's testimony of additional impairments, including poor vision and psychiatric problems in contravention of *Wallace*, 722 F.2d at 1155; *Neumerski v. Califano*, 456 F.Supp. 979, 981 (E.D.Pa.1978).
(4) The ALJ misapplied the vocational "grids" in contravention of *Burnam v. Schweiker*, 682 F.2d 456, 457–58 (3d Cir.1982); *Santise v. Schweiker*, 676 F.2d 925, 934–35 (3d Cir.1982), *cert. denied*, 461 U.S. 911, 103 S.Ct. 1889, 77 L.Ed.2d 280 (1983).

of Garcia's allegations in a conclusory manner or failed to consider them altogether. The lack of certain evidence, which the Secretary maintains justified its position, is of no consequence. The Secretary continuously flouted well-established precedents and thus, its position cannot be considered substantially justified. *See Washington v. Heckler,* 756 F.2d at 962. Accordingly, we conclude that Community Legal Services is entitled to an award of attorneys' fees under the EAJA for the appellate work performed in this case.

Having determined the entitlement to such fees, we turn now to their calculation. The EAJA provides that:

[A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii).

■ According to Community Legal Services, an enhanced fee at the market rate [5] is warranted here because of the presence of the following "special factors": limited availability of qualified attorneys; the contingent nature of the case; the undesirability of the case; the results obtained and the quality of the representation. Community Legal Services contends that this case was extremely undesirable to private counsel because of the unfavorable decision at the ALJ level, the ALJ's refusal to consider the evidence properly, the prevailing policy of the Appeals Council to rubber stamp ALJ decisions and the lack of certain psychiatric data needed to prove severe psychiatric impairment. In support of this contention, Community Legal Services offers a letter from the original private counsel stating that she withdrew from the case because the risks of proceeding in federal court

after losing the administrative appeals were too great. See Letter from Maritza Gonzalez Ortiz dated Dec. 30, 1986. In addition, Community Legal Services proffers a declaration from the Director of the Philadelphia Volunteers for the Indigent Program stating that it would be unlikely that Garcia's case would be referred to the program. *See* Declaration of Eve Biskind Klothen.

The mere fact, however, that one private counsel and one non-profit agency did not wish to handle Garcia's claim does not establish limited availability of qualified attorneys for the case. Nor does the fact that the case was weak or difficult or was instituted during a time when the agency was hostile toward disability claims compel the finding of special factors. There is nothing exceptional about those circumstances. In fact, they are quite common in Social Security cases. Moreover, the possibility of remuneration under 42 U.S.C. § 406 (1982), if successful, is significant incentive for private counsel to take on such cases.[6] We conclude that there is an absence of special factors. Therefore, an enhanced fee award on that basis is inappropriate.

In the alternative, Community Legal Services requests the statutory fee rate of $75.00 per hour, adjusted for the cost of living increase since 1981. Community Legal Services contends that the cost of living adjustment results in a rate of $88.56 per hour. The Secretary objects to a cost of living adjustment on two bases: 1) there is no showing that the cost of living has risen to the extent that $75.00 is no longer sufficient to permit parties to find competent counsel; and 2) if we find that a cost of living adjustment should be made, the increase should be calculated from August,

---

**5.** Community Legal Services maintains that 4.5 hours of appellate work were expended in 1984 at the market rate of $135.00 per hour and 4 hours in 1986–1987 at the market value of $150.00 an hour, totalling $1,185.00 in appellate fees.

**6.** In Title II cases, under 42 U.S.C. § 406, if disability benefits are awarded and attorneys'

fees are deemed appropriate, private counsel may receive a fee of up to 25 percent of the plaintiff's past due benefits. Garcia's past due benefits totalled approximately $27,000.00. Under the 25 percent formula, the maximum amount withheld for attorneys' fees could have been approximately $6,700.00.

1985, not October, 1981. Both objections are without merit.

■ The Secretary's first objection attempts to fuse the two distinct statutory bases for enhanced fees under the EAJA. An upward adjustment is permitted if "an increase in the cost of living ... justifies a higher fee" or if "a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). Thus, the inquiry is simply whether the cost of living has increased sufficiently to warrant making the adjustment. In the fee petition before this court, Community Legal Services calculates the cost of living increase on the basis of the Consumer Price Index published by the Bureau of Labor Statistics, concluding that the cost of living rose 18% from October 1, 1981 through October, 1986. This court has already expressly ruled that the Consumer Price Index may be used in determining cost of living adjustments under the EAJA, see Natural Resources, 703 F.2d at 713. If we assume for the moment that 18% is an accurate figure, certainly such an inflation rate is high enough to justify making an adjustment to the statutory fee rate.

■ Indeed, the Secretary raises only one objection to the formula employed by Community Legal Services—the increase should be calculated from August, 1985, not October, 1981. The Secretary insists that after section 2412(d) of the original EAJA expired on October 1, 1984, see Pub.L. No. 96–481, § 204(c), 94 Stat. 2325, 2329 (1980), the present EAJA was "reenacted" into law on August 5, 1985, see Pub.L. No. 99–80, 99 Stat. 183, 186 (1985) codified at 5 U.S.C.A. § 504 (West Supp. 1987) and 28 U.S.C. § 2412. Consequently, the Secretary argues, that "reenactment" date must be the reference point for calculating an increase in the cost of living, not October 1, 1981, the date the EAJA was originally effective. Moreover, according to the Secretary, by reenacting the EAJA on that date but leaving intact the $75 per hour fee cap, Congress implicitly found that the "relatively modest" inflation rate since 1981 did not warrant an upward modification of the fee cap.

We recently addressed these exact arguments and rejected them. See Allen v. Bowen, 821 F.2d 963 (3d Cir.1987). The plain language of section 6 of Pub.L. No. 99–80 demonstrates that the expired section 2412(d) was revived and made effective again "as if [it] had not been repealed." Pub.L. No. 99–80, § 6, 99 Stat. 183, 186 (1985). The legislative history also notes that "subsection (d) of section 2412 of title 28 which [was] repealed by the original EAJA [is] revived by this Act." H.R.Rep. No. 120, 99th Cong., 1st Sess. 20, reprinted in 1985 U.S.Code Cong. & Admin.News 132, 149. Thus, as we concluded in Allen, "Pub.L. No. 99–80 ... intend[ed] to have the cost of living adjustment to the $75 an hour rate measured from 1981." Allen, 821 F.2d at 967.

Accordingly, because we find that a cost of living adjustment measured from 1981 is appropriate and because the Secretary does not in any other way object to Community Legal Services' formula,[7] we accept its proffered calculations.

### III.

As we stated previously, the district court awarded the statutory fee of $75.00 per hour for 26.75 hours of work performed at the trial level. Community Legal Services appeals from that judgment on three bases: 1) there are special factors present here which justify an upward adjustment to the market rate;[8] 2) alternatively, a fee enhancement is justified to reflect inflation measured from 1981; and 3) the district court's intimation that the cost of living calculation requires a series of separate inflation calculations for each

---

7. The Secretary does not challenge the accuracy of the calculation of the hours expended by Community Legal Services nor does he challenge the reasonableness of the expenditure of those hours.

8. Community Legal Services calculates that 14 hours of trial work were expended in 1983 at the market rate of $120.00 per hour and 12.75 hours in 1986 at the market rate of $150.00 an hour, totalling $3,592.50 in trial fees.

year the services were performed is incorrect.[9]

The district court concluded that because Community Legal Services had failed to establish "limited availability of qualified attorneys" for cases such as this, an enhanced fee based on special factors was not justified. We review this finding of fact under a clearly erroneous standard. *See* Fed.R.Civ.P. 52(a).[10] Since, as discussed *supra,* we agree that no special factors are present here, we affirm that part of the judgment.

With respect to Community Legal Services' cost of living claim, the district court declined to permit a fee enhancement on that basis, stating that:

> ... the accuracy of this calculation is doubtful given the fact that the services performed by the attorney spanned several years during which time the Consumer Price Index figures undoubtedly varied, and in any event, given the fact that in reenacting the current attorney's fee statute in August of 1985, Congress retained the $75 per hour figure without any cost of living adjustment, Act of August 5, 1985, Pub.L. No. 99–80, § 6, 99 Stat. 184, the plaintiff's attorney would be entitled at most to an adjustment from August of 1985 to October of 1986, which adjustment would be nominal and has not been calculated or established by the plaintiff....

*Garcia v. Schweiker,* Civ. No. 83–1453, slip op. at 3 (E.D.Pa. Feb. 11, 1987). As we stated *supra, Allen v. Bowen* controls on the issue of whether an adjustment should be measured from 1981. Thus, we reverse the judgment appealed from insofar as it did not permit the statutory fee of $75.00 per hour to be adjusted for inflation measured from 1981.

■ Lastly, Community Legal Services takes issue with the district court's statement that "the accuracy of [Garcia's] calculation is doubtful given the fact that the services performed by the attorney spanned several years during which time the Consumer Price Index figures undoubtedly varied." *Garcia,* slip op. at 3. The meaning of this statement is somewhat unclear.[11] To the extent that it means, as Community Legal Services apparently thinks it does, that the cost of living calculation must be done individually for each year in which the services were performed rather than from 1981 through the date the plaintiff became a "prevailing party," we reject the district court's reasoning.

As we stated in *Natural Resources,* "the cost of living adjustment provision seems designed to provide a disincentive to agencies to prolong the litigation process." *Natural Resources,* 703 F.2d at 713. The agency should not reap the benefits of any inflation during litigation. Similarly, attorneys should not have the purchasing power of their fees eroded by such inflation. By calculating the total fee amount by using the closest available Consumer Price Index to the date on which the plaintiff became a prevailing party, as Community Legal Services does here, attorneys will receive, in today's dollars, the purchasing power to which they are entitled.

## IV.

Consequently, we conclude that Community Legal Services is entitled to an award for attorneys' fees under the EAJA for work performed at the appellate level at

---

9. The Secretary does not appeal the district court's findings that Garcia is a prevailing party or that the Secretary was not substantially justified in its position.

10. Community Legal Services cites *Washington v. Heckler* for the proposition that fact questions in paper cases are subject to plenary review. *See id.,* 756 F.2d at 963. *Washington,* however, was written before Fed.R.Civ.P. 52(a) was amended to make clear that findings of fact based on documentary evidence may not be set aside unless clearly erroneous.

11. Read in isolation, this statement could mean that the inflation rate of 18% assumes a constant rate of inflation throughout the five years, thereby failing to take into account the effect of possible compounding of interest. Of course, compounding would be favorable to Community Legal Services. Since Community Legal Services does not urge such a computation, we need not consider it. Furthermore, given the amount of hours involved here, the effect of such compounding would be negligible.

the rate of $88.56 per hour for 8.5 hours. Moreover, the judgment appealed from must be reversed on the cost of living adjustment claim and remanded for the entry of a judgment awarding Community Legal Services attorneys' fees at the rate of $88.56 for 26.75 hours of work performed at the trial level.