**Rosa Lee SPENCE, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 85–250–JLL.**

United States District Court, D. Delaware.

March 8, 1988.

Order Filed March 28, 1988.

William Schab, Schab & Barnett, Georgetown, Del., for plaintiff.

Edmond Falgowski, Asst. U.S. Atty., Wilmington, Del., for defendant.

**OPINION**

LATCHUM, Senior District Judge.

This case is again before the Court on plaintiff's motion for an award of attorney's fees under the Equal Access To Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(B). (Docket Item ["D.I."] 19.) Previously, this Court, on June 30, 1986, adopted (D.I. 16) the U.S. Magistrate's Report and Recommendation which held that the plaintiff was disabled within the mean-

ing of the Social Security Act, reversed the Secretary's final decision to the contrary and remanded the matter for a determination of disability insurance benefits. (D.I. 14.)

On February 12, 1987, plaintiff moved for an award of attorney's fees under EAJA. (D.I. 19.) Briefing on the issue before the Magistrate was not completed until September 24, 1987. (D.I. 24.) On December 10, 1987, the U.S. Magistrate issued his Report and Recommendation which recommended that plaintiff's motion for an award of attorney's fees be denied because the Secretary had met his burden of demonstrating that his position in the prior phases of this case was substantially justified. (D.I. 25.) Thereafter, the plaintiff requested and obtained from this Court two extensions of time until February 5, 1988, to object to the Magistrate's Report. (D.I. 28 & 30.) When no objection was filed in the Clerk's Office by February 5, 1988, this Court on February 18, 1988, adopted the Magistrate's Recommendation and denied plaintiff's motion for an attorney's fee award. (D.I. 30.) Plaintiff's attorney telephoned the Court to say he had filed objections. However, none was ever filed with the Clerk of this Court but a copy was retrieved from the U.S. Magistrate's files and then filed in the Clerk's office on February 19, 1988. (D.I. 31.) On February 22, 1988, plaintiff filed a letter requesting reconsideration of the erroneously misfiled objection in the light of a new Third Circuit opinion in *Taylor v. Heckler*, 835 F.2d 1037 (3d Cir.1987), issued on December 23, 1987, after the Report and Recommendation of the Magistrate dated December 10, 1987. (D.I. 32). The Secretary filed a response to plaintiff's request for reconsideration. (D.I. 33).

Despite the confusion created by plaintiff's attorney in misfiling the objection, the Court will reconsider plaintiff's motion for an award of attorney's fees under EAJA in the light of the recent *Taylor v. Heckler* opinion.

## I. *EAJA and Third Circuit Law After Taylor*

EAJA entitles a prevailing party to receive reasonable fees and costs incurred in any non-tort civil action against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985). There is no dispute in the instant case that plaintiff is a "prevailing party," because she has succeeded in reversing the final decision of the Secretary of Health and Human Services ("Secretary") and has obtained disability benefits. The sole question which plaintiff's motion presented to Magistrate Powers was whether the "position" of the Government was "substantially justified." He held that, although it was ultimately incorrect, the Government's "position" was nonetheless substantially justified, and he therefore denied the motion. (*See* D.I. 25 and *infra* Section II.(E).)

■ For purposes of interpreting the relevant EAJA provision, the Third Circuit has consistently defined "position of the United States" as actually being comprised of *two* distinct positions: (1) the position taken by the Government in the civil action litigation ("litigation position"); and (2) the agency's underlying action or failure to act upon which the civil action is based ("agency position"). *Taylor*, 835 F.2d at 1040 (citing *Lee v. Johnson*, 801 F.2d 115, 116 (3d Cir.1986) (Becker, J., dissenting from denial of petition for rehearing *in banc*)); *see also Coup v. Heckler*, 834 F.2d 313, 319 (3d Cir.1987); 28 U.S.C. § 2412(d)(2)(D) (Supp. III 1985). Consequently, in order for the Government to prevail (i.e., to avoid paying attorney's fees), it must prove that *both* of these positions were substantially justified.

There is disagreement among the circuits as to what is required for the Government's position to be substantially justified. Some circuits merely require that the position of the Government be "reasonable." Other circuits, including the Third Circuit, clearly require a higher quantum of proof. In the *Taylor* opinion, Judge Higginbotham points out that in its earlier decisions on EAJA, the Third Circuit had already recog-

nized that the "substantially justified" exception requires the Government to "show more than that [its] position was merely reasonable." *Taylor*, 835 F.2d at 1041 (citing *Lee v. Johnson*, 799 F.2d 31, 38 n. 7 (3d Cir.1986)). In a footnote, Judge Higginbotham states that the Third Circuit's interpretation of "substantially justified" has been consistent:

> Careful examination of the *Lee* opinions and our subsequent decision convinces us that a consistent interpretation of "substantially justified" has been set forth and followed by this Court. Although the idea has been expressed in a variety of ways, our holdings since the reenactment of EAJA have, consistent with the House Report, required more than mere reasonableness. The government must demonstrate that its factual and legal positions in the underlying agency action and in the subsequent litigation have been solid and well-founded if it is to fall within this EAJA exception.

*Taylor*, 835 F.2d at 1041 n. 11. In the opinion's text he reiterates that "[i]n EAJA cases in this Circuit, a government position is 'substantially justified' if it is *solid and well founded.*" *Id.* at 1042.

The opinion then goes on to summarize the series of proofs which the Government must make in order to prove that each of its positions (litigation and agency) was substantially justified (or "solid and well-founded"):

> In order to prevail, the government must show: 1) a [solid and well-founded] basis in truth for the facts alleged; 2) a [solid and well-founded] basis in law for the theory it propounded; and 3) a [solid and well-founded] connection between the facts alleged and the legal theory advanced. *Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir.1985) (citing *Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584, 593 (3d Cir. 1984)).

*Garcia v. Schweiker*, 829 F.2d 396, 399 (3d Cir.1987); *accord Coup v. Heckler*, 834 F.2d 313, 319 (3d Cir.1987). In short, unless the government clears six high hurdles (three required showings for each of two positions), EAJA renders it liable for the prevailing party's reasonable fees and costs.

*Id.* at 1042. Despite the Court of Appeal's statement that its interpretation of "substantially justified" has been consistent, it is significant to note that in the above-quoted passage the court used the phrase "solid and well-founded" to replace the word "reasonable" as it originally appeared in *Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir.1985). (In setting forth the three required proofs, Magistrate Powers' report cited to the above passage from *Washington*, but of course maintained the original language, which used the word "reasonable." *See* D.I. 25 at 3.)

Finally, the *Taylor* court addressed the question of whether the Third Circuit might not just as well adopt a *per se* rule with regard to substantial justification. In other words, a *per se* rule would dictate that if the Government's position failed to pass review under the "substantial evidence" standard, then, as a matter of law, the Government's position would *not* be substantially justified. While the court declined to adopt a *per se* rule, that court, nevertheless, came as close as it possibly could have come to adopting such a rule, without actually saying so. This is indicated by the court's quotation from, and comments on, the report of the House Committee on the Judiciary which accompanied the permanent reenactment of EAJA. In that report the Committee found

> [e]specially puzzling ... statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it was arbitrary and capricious or was not supported by substantial evidence. *Agency action found to be* arbitrary and capricious or *unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act.* Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.

835 F.2d at 1044 (emphasis supplied) (quoting H.R.Rep. No. 120, 99th Cong., 1st Sess.

10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News pp. 132, 138). The Court of Appeals concluded that although this statement of legislative intent approached a *per se* rule, it believed "that Congress has left the door open—if only a crack—to the possibility that the Government could demonstrate that a denial of disability benefits that flunked substantial evidence review was nonetheless substantially justified." 835 F.2d at 1044.

In sum, the *Taylor* opinion is significant for several reasons: (1) it reaffirmed that there is no *per se* rule; (2) however, it stated in no uncertain terms that it would require extraordinary circumstances for the Government to demonstrate that its position, although failing substantial evidence review, was nonetheless substantially justified; (3) it made clear that for the Government to prove substantial justification, it must clear the "six high hurdles" comprised of three proofs for each of two governmental positions; and (4) it removed any prior uncertainty as to the showing the Government must make in order to prove that each position was substantially justified—the Government must prove that its "position" was not merely reasonable, but rather "solid and well-founded." Thus, while expressly denying a change of the law, *Taylor* nevertheless appears, in effect, to have greatly heightened the standard for the Government's proof of substantial justification.

## II. *Background*

### A. *Spence v. Bowen: Factual and Procedural Background*

Plaintiff, Rosa Lee Spence ("Spence"), was born in 1926 and attended school until the fifth grade. She made a claim for disability insurance and supplemental security income ("SSI") benefits on January 10, 1984, alleging disability as of June 15, 1982, due to high blood sugar and heart trouble. Prior to 1982, Spence had worked primarily as a poultry worker in poultry processing plants. She unsuccessfully pursued her claim through the usual administrative channels and eventually requested and received a hearing before an administrative law judge ("ALJ") on September 19, 1984. On December 4, 1984, the ALJ issued a decision finding and concluding that Spence was not disabled. (*See* D.I. 5A at 18.) Spence's two requests for review were denied by the Appeals Council. Consequently, the ALJ's decision constitutes the Secretary's final decision.

### B. *The Pertinent Statutory Law and Regulations*

A brief overview of the pertinent statutory law and regulations is necessary in order to clearly understand the nature of the error made by the ALJ. Under the Social Security Act ("Act"), "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A), (B), (C), & (D). A person's physical impairment is "disabling" within the meaning of the Act if it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration's regulations mandate that in order to determine whether an individual is disabled, the ALJ must make his evaluations in the following sequential order:

*Step 1.* If the claimant is working and his work is substantial gainful activity, then the claimant is not disabled (regardless of medical condition, age, education, or work experience). 20 C.F.R. § 404.1520(b). If this is not the case, the evaluation proceeds to Step 2.

*Step 2.* If the claimant does not have an impairment such as which would significantly limit his physical or mental ability to do basic work activities, then the ALJ must find that the claimant is not disabled. 20

C.F.R. § 404.1520(c).[1] If this is not the case, the evaluation proceeds to Step 3.

*Step 3.* If the claimant's impairment meets certain durational or other requirements as listed in Appendix 1, then the ALJ must find the claimant to be disabled. 20 C.F.R. § 404.1520(d). If this is not the case, the evaluation proceeds to Step 4.

*Step 4.* [2] If the ALJ cannot make a decision based on the claimant's current work activity or on medical facts alone, and yet the claimant has a severe impairment, then the ALJ reviews claimant's "residual functional capacity" and the physical and mental demands of *the work claimant has done in the past.* "If [claimant] can still do *this kind of work*," then the ALJ must find that the claimant is not disabled. 20 C.F.R. § 404.1520(e). If, however, it is determined that claimant cannot do "this kind of work," the evaluation proceeds to Step 5.

*Step 5.* Finally, the ALJ must consider claimant's residual functional capacity, age, education, and past work experience to see if claimant can do other work. If claimant cannot, then the ALJ must find the claimant to be disabled. 20 C.F.R. § 404.1520(f).

### C. *The ALJ's Decision*

In following these guidelines, the ALJ reached the following conclusions. First, he found that Spence's major impairments consisted of hypertension and mental deficiency. (D.I. 5A at 17.) He further found, however, that while these impairments were severe, they were not so severe as to be considered medically disabling under the Act. (*Id.*)

Specifically, the ALJ found that Spence retained the residual functional capacity to perform work of a light nature (*id.* at 18) (i.e., work which would not require lifting of objects weighing in excess of 20 pounds.

*See* 20 C.F.R. § 404.1567(b)). Assuming this residual functional capacity, the ALJ concluded that Spence retained the capability of performing *her past work as a poultry worker.* (D.I. 5A at 18.) The ALJ found that Spence's past relevant work as a poultry worker did not require the performance of work-related activities precluded by her residual functional capacity. (*Id.* at 19.) The ALJ therefore concluded that Spence's impairments did not prevent her from performing her "past relevant work."

### D. *Magistrate Powers' Report and Recommendation Reversing the ALJ's Findings and Conclusions and the Secretary's Final Decision*

In his report (*see* D.I. 14), Magistrate Powers found that the ALJ's conclusion that Spence could return to her past relevant work as a poultry worker was not supported by substantial evidence. (*Id.* at 5.) The key to understanding the Magistrate's ruling is Step 4 of the evaluation process, 20 C.F.R. § 404.1520(e). In his brief supporting the agency's position, the Secretary argued that under subsection 1520(e) Spence could be found able to perform her past relevant work if she could do either (1) "the actual functional demands and job duties of a particular past relevant job; or (2) the functional demands and job duties of the occupation as *generally* required by employers throughout the national economy." (*See* D.I. 14 at 5.) The Magistrate concluded that the Secretary's position was based on an erroneous interpretation of "kind of work" as used in subsection 1520(e). In support of his conclusion, the Magistrate cited to *Rogers v. Schweiker,* 558 F.Supp. 1358 (N.D.Ala.1983):

> [Section 404.1520(e)] directs the Social Security Administration to examine the claimant's "residual functional capacity and the physical and mental demands" of

---

1. It should be noted that the Third Circuit has held this provision to be invalid, because it is inconsistent with the governing statute. *Baeder v. Heckler,* 768 F.2d 547, 551–53 (3d Cir.1985). *See also Wilson v. Secretary of HHS,* 796 F.2d 36, 39–42 (3d Cir.1986). The *Baeder* court so held because subsection 1520(c) permits denial of disability benefits based solely on medical factors without considering age, education, or

work experience. The court held that the statute is not equally limiting, but instead also allows for consideration of vocational factors. *See* 42 U.S.C. §§ 423(a)(1), (d)(1)(A), (d)(3).

2. Special note should be taken of this step, because it is here that the Secretary made his error, according to Magistrate Powers.

the claimant's past work. This review is meant to lead to comparison of a claimant's current functional capacity and the functional capacity required in claimant's previous jobs. A claimant may still do her prior work and is not disabled if she retains the functional capacity which her past work required. A claimant who no longer has the functional capacity that her prior work required cannot do the "kind of work" she has done in the past, within the meaning of section 404.-1520(e). Two positions which share the same title and have certain activities in common are not the same "kind of work" where one requires a different functional capacity from the other.

*Id.* at 1360.

The Magistrate noted that the Secretary had conceded that Spence's past relevant work actually required her to do *medium to heavy work* as defined by the Secretary's regulations.[3] (D.I. 14 at 6.) Yet the ALJ had specifically found that Spence could not perform such work; instead, the ALJ had found Spence able to perform only "light work," i.e., work that involves lifting no more than 20 pounds at a time. *See* 20 C.F.R. § 404.1567(b). Consequently, the Magistrate concluded that Spence could *not* perform the same "kind of work" as that phrase should be interpreted within the meaning of subsection 1520(e). (D.I. 14 at 6.) This being the case, the evaluation should have moved to Step 5 (subsection 1520(f)), under which Spence would clearly be found disabled. (D.I. 14 at 6–7.)

In sum, Magistrate Powers found and concluded, and this Court affirmed, (1) that the ALJ's conclusion that Spence could return to her past relevant work was unsupported by substantial evidence—her past relevant work exceeded the physical exertional requirements of "light work," which was the only kind of work the ALJ himself found Spence still able to perform; and (2) that the Secretary's position in the litigation was based on an erroneous interpretation of "kind of work," as that phrase should be interpreted under subsection 1520(e).

### E. Magistrate Powers' Report and Recommendation Denying Plaintiff's Motion for Award of Attorney's Fees

As stated above, after Magistrate Powers' reversal of the Secretary's decision, plaintiff then filed a motion for award of attorney's fees under EAJA. (*See supra,* section I.) Plaintiff made two arguments for granting the motion. First, plaintiff argued that the Secretary's interpretation of "past relevant work" within the meaning of subsection 1520(e) was "unreasonable" in light of the *Rogers v. Schweiker* case, which the Magistrate had relied upon in making his determination. (*See supra,* section II.(D).) The issues presented by plaintiff's argument can best be summarized by the following question: Can the Secretary make a finding of "not disabled" if the claimant cannot perform the exertional requirements and job duties *actually required* by his *particular* former job but *can* perform the requirements and job duties of the job as *generally* required in the national economy? Obviously, the Secretary answered this question affirmatively, and has indicated this interpretation of the regulations in the promulgation of two Social Security Rulings ("SSR").[4] One

---

**3.** Under the pertinent regulations, "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Id.* § 404.1567(d).

At the hearing before the ALJ on September 19, 1984, Spence offered uncontradicted testimony that her job entailed periodic lifting of boxes of chicken parts that weighed 70 to 80 pounds. (D.I. 5A at 27.) She also suggested that sometimes only "half of the box or whatev-

er" had to be moved from one spot to another. (*Id.*) Moreover, in a Disability Report and a Vocational Report which Spence filed in 1984, she reported that she was regularly required to lift between 40 and 60 pounds. (*See* D.I. 5A at 89, 95.)

**4.** One of these rulings, SSR 82–61, provides that the Dictionary of Occupational Titles' ("DOT") descriptions of jobs can be relied upon to define a job as it is usually performed in the national economy. DOT defines the job of a poultry plant employee as "light work." However, the ALJ never stated in his decision that the exer-

court of appeals supports the Secretary's position. Two courts of appeals and the *Rogers v. Schweiker* court have concluded otherwise (i.e., that if the claimant cannot perform his *particular* past job, then he is disabled). While the Magistrate also took the latter position, he stated that "it can hardly be said that the issue is settled law" and concluded that the courts had not reached a consensus on the question. (D.I. 25 at 9, 11.) He therefore concluded that "a *reasonable* argument can be made that the phrase 'kind of work' in section 404.-1520(e) authorizes reference to a general job description."[5] (*Id.* at 11; emphasis supplied.) Consequently, he found that the Secretary had met his burden of demonstrating that his position was substantially justified.

Plaintiff's other argument in support of her motion for attorney's fees was that the Secretary's reliance on the SSR was an after-the-fact fabrication to cover an unreasonable error of fact committed by the ALJ. Here, plaintiff contended that the ALJ never had the pertinent SSR (or, therefore, the DOT) in mind when he ruled that Spence's poultry plant work was "light work"—instead, he merely made a factual error, and the Secretary's position before the Magistrate was merely conjured up to mask this error. Magistrate Powers found this argument to be unconvincing. (*See* D.I. 25 at 8–9.) The Magistrate found that while the ALJ never explicitly stated that he was determining the exertional requirements of Spence's past relevant work on the basis of the DOT, there was "little doubt" that the DOT was in fact the basis of his finding. The Magistrate reached this conclusion after noting that both denials of plaintiff's claim which preceded the ALJ's hearing had expressly stated that the DOT classified Spence's former work as "light work." (*See* D.I. 5A at 53, 57.)

Because the ALJ had not otherwise engaged in an analysis of the actual exertional demands of Spence's past work, the Magistrate concluded that the ALJ must have reached his decision by reference to the DOT's definition of poultry worker. The Magistrate therefore found that the ALJ had committed no factual error. (*See* D.I. 25 at 8–9.)

### F.  Consideration of Plaintiff's Objections

In plaintiff's Objections to the Magistrate's denial of attorney's fees (D.I. 31), counsel for plaintiff makes the following contentions. First, plaintiff's counsel contends that, contrary to the Magistrate's conclusions, the ALJ's decision was simply a clear, factual error. (*See* D.I. 31 at 3.) He argues that the uncontradicted evidence presented at the hearing and in prior reports clearly indicated that Spence's former job regularly required her to lift between 40 and 80 pounds. (*See* D.I. 5A at 27, 89, 95.) Moreover, he quotes the ALJ's conclusions that Spence retained the residual functional capacity to perform work "of a light nature," which the ALJ correctly recognized to mean "work which requires her to stand for the great part of the day, but which would not require her to lift objects weighing in excess of 20 pounds." (*Id.* at 18.) The ALJ had found that Spence's "past relevant work as a poultry worker did not require the performance of work-related activities precluded by [these] limitations." (*Id.* at 19.) Counsel notes that the ALJ concluded that "[w]ith this residual capacity ... claimant retains the capability of performing *her past work* as a poultry worker." (*Id.* at 18; emphasis supplied.) Counsel points out that the ALJ's decision did not refer to the exertional requirements of poultry workers in the industry, generally—instead, it referred to *Spence's* past

---

tional requirements of Spence's past relevant work would be determined on the basis of DOT.

The other ruling, SSR 82–62, provides that "[t]he Residual Functional Capacity to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout

the economy) is generally a sufficient basis for a finding of 'not disabled'."

**5.** In reaching his conclusion Magistrate Powers also relied upon 20 C.F.R. § 404.1566(d), which authorizes the Secretary to take administrative notice of reliable job information set out in various publications such as the DOT. (*See* D.I. 25 at 11 n. 2.)

relevant work, in particular. Furthermore, counsel argues that in the two subsequent affirmances of the ALJ decision by the Appeals Council, no mention was made of the DOT or of the way others in the industry might perform Spence's former work. (D.I. 31 at 4.) Consequently, counsel concludes that the ALJ simply erred in finding that Spence's past work did not require her to lift in excess of 20 pounds.

Counsel for plaintiff also points out that it was not until plaintiff appealed the ALJ decision before the Magistrate that the Secretary—for the first time—argued that the ALJ's decision was based on poultry work's exertional requirements as defined in the DOT. In sum, plaintiff's counsel asserts that the ALJ erred, and when plaintiff pointed it out, the Secretary "shifted gears" and took a new position to cover up the error.

Plaintiff's counsel's other argument in his objections is somewhat more complex. He contends that the Secretary's reliance upon SSR–82–61 is misplaced in light of a close reading of SSR–82–62. (D.I. 31 at 5.) The crux of counsel's argument is that, contrary to the directions set forth in SSR–82–62, the ALJ (1) failed to adequately take into account the testimony of Spence as to the demands of her past work, and (2) failed to precisely and explicitly recite the reasoning behind his decision. (*See* D.I. 31 at 5–6.) As to the first point, counsel points to the following language in the ruling:

> The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work. Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) *in some cases,* supplementary or

corroborative information from other sources such as employers, the *Dictionary of Occupational Titles,* etc., on the requirements of the work as generally performed in the economy.

SSR–82–62 at 160–61 (emphasis supplied).

As to the second point, counsel quotes that portion of the ruling which states:

> The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be *developed and explained fully in the disability decision.* Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit.

*Id.* at 161 (emphasis supplied).

Counsel argues that the ALJ failed to follow these guidelines by (1) ignoring Spence's uncontradicted testimony as to the exertional requirements of her past relevant work, and (2) failing to clearly recite the evidence and develop the reasoning for his decision, i.e., failing to cite to the SSR, the DOT, or whatever. Counsel initially emphasizes that these rulings are merely "in-house" policy statements prepared by the Secretary, and do not carry the weight of duly promulgated regulations. In the alternative, counsel argues that, even if the rulings were controlling, the ALJ committed legal error by failing to follow them. Thus, so plaintiff's argument goes, the Secretary in any event has no sound basis in law for using the rulings to support his final decision denying disability.

### III. *Applying the Recently Enunciated Taylor Standard in This Case*

There are two questions which now must be addressed: (1) does the *Taylor* decision, which was issued after the Magistrate's December 10, 1987 Report and Recommendation, significantly alter the standard for proving substantial justification under EAJA; and (2) if so, does *Taylor* require a reversal of the Magistrate's denial of attorney's fees.

As previously indicated in Section I, *supra*, this Court answers the first question in the affirmative. Additionally, for the specific reasons set forth below, the Court also gives an affirmative response to the second question.

■ As explained above, under EAJA the Government bears the burden of proving that both its agency and litigation positions were substantially justified. After *Taylor*, in order to carry this burden the Government must make the following showings as to each position: (1) a *solid and well-founded* basis in truth for the facts alleged; (2) a *solid and well-founded* basis in law for the theory it propounded; and (3) a *solid and well-founded* connection between the facts alleged and the legal theory advanced. *Taylor*, 835 F.2d at 1042. Thus, the Government must clear "six high hurdles" in order to escape liability for Spence's attorney's fees. *See id.*

■ Employing the "solid and well-founded" standard, the Court now concludes that the Government has failed to carry its burden. Turning first to the Government's agency position, the Court finds that there was no solid and well-founded basis in truth for the facts alleged in the ALJ's decision. The ALJ found that Spence retained the residual functional capacity to perform "light work." (*See* D.I. 5A at 18, 19.) "Light work" is defined in the pertinent regulations as work which would not require the lifting of objects weighing in excess of 20 pounds. *See* 20 C.F.R. § 404.1567(b). Thus, the ALJ's findings specifically stated: "The claimant has the residual functional capacity to perform work-related activities except for work involving lifting in excess of 20 pounds." (D.I. 5A at 19.) Nevertheless, the ALJ also found that Spence's prior work did not exceed these limitations. Thus, his decision specifically stated that "[w]ith this residual capacity ... claimant retains the capability of performing *her past work as a poultry worker.*" (*Id.* at 18; emphasis supplied.) Contrary to this determination, however, plaintiff presented uncontradicted evidence that her past work as a poultry worker regularly entailed the lifting of objects weighing in excess of 20 pounds. For example, at the hearing before the ALJ, Spence testified that her job entailed periodic lifting of boxes of chicken parts which weighed 70 to 80 pounds. (*Id.* at 27.) Even if, as Spence admitted, she sometimes moved only half of such a box (*see id.*), such lifting would still exceed the exertional requirements of "light work." Two prior reports filed in 1984 similarly indicated that Spence's prior work required her to lift between 40 and 60 pounds. (*See id.* at 89, 95.) Nowhere in his decision did the ALJ attempt to refute plaintiff's allegations as to the lifting requirements of her prior work. Indeed, the Magistrate's Report and Recommendation reversing the denial of benefits (D.I. 14) noted that in the ensuing litigation "the Secretary conced[d] that plaintiff's past relevant work actually required her to do medium to heavy work as defined by the Secretary's regulations." (*Id.* at 6.) *See supra* note 3. Consequently, there was no solid and well-founded basis for the ALJ's classification of Spence's past relevant work as "light work." Therefore, the Court finds that the Secretary's agency position was not substantially justified.

In addition, it is significant to note that while the *Taylor* court expressly rejected a *per se* rule, it quoted from and commented on language in a House Report which stated that "[a]gency action found to be ... unsupported by substantial evidence is virtually certain not to have been substantially justified under [EAJA]," and that "[o]nly the most extraordinary special circumstances could permit such an action to be found to be substantially justified under [EAJA]." *Taylor*, 835 F.2d at 1044 (quoting H.R.Rep. No. 120, 99th Cong., 1st Sess. 10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News pp. 132, 138). The Court of Appeals concluded that Congress had left the door open—"if only a crack"—to the possibility that the Government could prove otherwise. The Court finds that the Government has failed to provide such proof. As outlined in Section II.(E), *supra*, the Magistrate presented a well-reasoned analysis which explained how the Secretary's interpretation of "kind of work," while errone-

ous, could nonetheless be substantially justified. (*See* D.I. 25 at 9–11.) Yet in setting forth the series of proofs which the Government was required to make, the Magistrate correctly relied upon the "reasonable basis" language in *Washington v. Heckler,* 756 F.2d 959, 961–62 (3d Cir.1985). (*See* D.I. 25 at 3.) Thus the Magistrate concluded that "a *reasonable* argument can be made that the phrase 'kind of work' in section 404.1520(e) authorizes reference to a general job description." (*Id.* at 11.) However, in light of the standard enunciated by the Court of Appeals in *Taylor,* this Court now finds that the Government's erroneous interpretation, while perhaps having a *reasonable* basis in law, does not pass muster under the solid and well-founded test. Hence, this position was not substantially justified.

Finally, even if the Secretary's interpretation of "kind of work" reaches the threshold under the solid and well-founded test, there is no indication that this interpretation was the basis for the ALJ's decision to classify Spence's past work as "light work." In reaching his decision, which stands as the Secretary's final agency position, the ALJ never made mention of SSR–82–61, SSR–82–62, or the DOT. Nor did the ALJ's decision state that the uncontradicted evidence relating to Spence's past work should be ignored. Thus, there was no articulated basis for classifying the exertional requirements of Spence's past work by any means other than by applying the pertinent regulations to the adduced facts. Admittedly, it may be logically inferred that the ALJ relied upon the DOT definition and the two rulings now suggested by the Secretary. But such inferences are insufficient to show a solid and well-founded basis in law for the theory propounded. Indeed, there was no such theory propounded at all. It is therefore impossible to justify the agency's alleged position as solid and well-founded when that position was never articulated in the final agency decision.

In sum, the Government has failed to show a solid and well-founded basis in fact and law for its decision to deny plaintiff disability benefits. As a result, the Magis-

trate's Report and Recommendation of December 10, 1987, will be reversed, and plaintiff's application for award of attorney's fees will be granted.

IV. *Award of Fees*

■ In his initial application for award of fees (D.I. 19), plaintiff's counsel requested $3,131.25 in compensation for 41.75 hours of work at the statutorily approved rate of $75 per hour. *See* 28 U.S.C. § 2412(d)(2)(A)(ii). In his subsequent fee petition (D.I. 24), counsel increased his request to $3,646.86, based on an hourly rate of $87.35. Counsel informed this Court that he based this figure on the Third Circuit's decision in *Allen v. Bowen,* 821 F.2d 963 (3d Cir.1987), in which the Court of Appeals allowed a cost of living adjustment to the $75 rate. Apparently, counsel believes that this $87.35 per hour rate, which happened to be applicable in the *Allen* case, is somehow a standard rate that should be applied to this case as well. Counsel's position is simply incorrect, and the Court feels obliged to present a brief overview of how the calculation should have been made.

As noted in Section I, *supra,* 28 U.S.C. § 2412(d)(1)(A) provides for the award of attorney's fees to qualified prevailing parties. Section 2412(d)(2)(A)(ii) provides that "attorney fees shall not be awarded in excess of $75 per hour unless the Court determines that an increase in the cost of living ... justifies a higher fee." In the period of time after the original enactment of § 2412(d), October 1, 1981 to October 1, 1984, the Third Circuit expressly approved the use of the Consumer Price Index in determining the cost of living adjustment to the $75 per hour rate. *See National Resources Defense Council v. Environmental Protection Agency,* 703 F.2d 700, 713 (3d Cir.1983). Section 2412(d) of the original EAJA expired on October 1, 1984. *See* Pub.L. No. 96–481, § 204(c), 94 Stat. 2325, 2329 (1980). On August 5, 1985, EAJA was reenacted into law. *See* Pub.L. No. 99–80, 99 Stat. 183, 186 (1985), *codified at* 5 U.S.C. § 504 and 28 U.S.C. § 2412. The Third Circuit has noted that the "plain

language of section 6 of Pub.L. No. 99–80 demonstrates that the expired section 2412(d) was revived and made effective again 'as if [it] had not been repealed.' " *Garcia v. Schweiker*, 829 F.2d 396, 401 (3d Cir.1987) (quoting Pub.L. No. 99–80, § 6, 99 Stat. 183, 186 (1985)). In recognition of this fact, the Third Circuit in the *Allen* case joined "those courts which have read Pub.L. 99–80 as intending to have the cost of living adjustment to the $75 an hour rate measured from 1981." *Allen*, 821 F.2d at 967.

In its subsequent decision in *Garcia*, the Third Circuit approved a method of calculating the total fee amount which used the closest available Consumer Price Index to *the date on which the plaintiff became a prevailing party. Garcia*, 829 F.2d at 402. In the instant case, the Magistrate issued his Report and Recommendation reversing the Secretary's denial of benefits on June 5, 1986. (D.I. 15.) On June 30, 1986, this Court issued a final order accepting and adopting the Magistrate's Report and Recommendation. (D.I. 16.) Therefore, this Court finds that plaintiff became a prevailing party as of June, 1986. Consequently, counsel for plaintiff should have provided a calculation as to how much the cost of living rose from October, 1981 to June, 1986. However, counsel provided no such calculation. Instead, counsel merely adopted the award figure from the *Allen* decision. Based on the wording of counsel's revised application, he apparently assumed that the $87.35 rate was the adjustment generally set by the Court of Appeals as of June, 1987, the date that the *Allen* case was decided. But whatever counsel's reasoning may have been, his revised application fails to provide the Court with the information necessary for a proper adjustment. Consequently, the Court will deny the revised fee petition, and grant plaintiff's original fee petition (D.I. 19) in the amount of $3,131.25, based on an hourly rate of $75.

A final order will be entered in conformity with this opinion.

ORDER

The Court, having considered Defendant's Motion to Alter or Amend Judgment (Docket Item ["D.I."] 36), and having reviewed Defendant's Memorandum of Law in Support Thereof (D.I. 37), it is

ORDERED that defendant's motion is hereby denied.

*Reasons:*

1. Defendant's first argument in support of its motion focuses on the Third Circuit Court of Appeals' deletion of the word "high" and the phrase "if only a crack" from its opinion in *Taylor v. Heckler*, 835 F.2d 1037 (3d Cir.1987), *as amended* on February 29, 1988. *See* Order Amending Opinion, *Taylor v. Heckler*, No. 87–1039 (3d Cir. Feb. 29, 1988). Defendant contends that because "this Court relied on such words" in its March 8, 1988 opinion ("opinion"), grounds now exist for altering or amending that opinion. The Court disagrees. Although this Court's opinion quoted the language in question, the Court's decision was certainly not contingent upon this language. Whether one chooses to view the Government's task as that of clearing "six high hurdles" or simply "six hurdles," the task remains the same. In order to prove substantial justification in EAJA cases, the Government must show solid and well-founded bases in fact and law for its agency and litigation positions. This is the standard which the court of appeals enunciated in *Taylor*, and it is the standard which this Court employed. Similarly, the deletion of the phrase "if only a crack" does not alter this Court's ultimate determination. It is noteworthy that, even after the deletion, the *Taylor* opinion continues to contain the following quotation from a House Report: "Agency action found to be ... unsupported by substantial evidence is virtually certain not to have been substantially justified under [EAJA]. Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under [EAJA]." *Taylor*, 835 F.2d at 1044 (quoting H.R.Rep. No. 120, 99th Cong., 1st Sess. 10 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News, pp. 132, 138). Under the facts of this case,

the Government failed to indicate the presence of such circumstances. In sum, this Court's decision did not hinge upon the language in question. Thus, the deletion of that language does not alter the Court's ultimate determination of the issues at hand.

2. Defendant's second argument in support of its motion is that, contrary to Magistrate Powers' findings, extensive circuit law supports the Secretary's interpretation of "past relevant work." The Secretary's position is that the claimant must not only demonstrate an inability to return to her particular past job, but also an inability to perform that work as it is generally performed. In particular, defendant notes that an Eleventh Circuit Court of Appeals decision contradicts the position taken by the court in *Rogers v. Schweiker*, 558 F.Supp. 1358 (N.D.Ala.1983), a key case upon which Magistrate Powers relied in reversing the Secretary's denial of rights. (*See* D.I. 14 at 5–6.) Furthermore, defendant cites to four additional cases which support the Secretary's interpretation, and which were not cited in Magistrate Powers' December 10, 1987 Report and Recommendation. In his December 10, 1987 report, Magistrate Powers stated that he had "been able to find three published decisions dealing with the issue [of interpreting 'kind of work'] in addition to *Rogers*." (D.I. 25 at 9.) In light of the cases now cited, defendant refutes the Magistrate's contention that only one circuit has upheld the Secretary's interpretation. Consequently, defendant argues that the Secretary's interpretation of "kind of work" is clearly solid and well-founded.

The Court would point out that defendant has never previously cited to the cases in question in its attempts to prove substantial justification. Neither defendant's initial three-page brief in opposition to plaintiff's application for attorney's fees (D.I. 23) nor its one-page response to plaintiff's February 19, 1988 letter (D.I. 33) regarding *Taylor* included any reference to the cases now mentioned. Instead, defendant's response simply stated that "[f]or the reasons previously stated and found by the court, the Secretary's decision in this case meets the solid and well-founded test set out in *Taylor*." (D.I. 33 at 1.) This Court therefore had no reason to assume that the state of the law was at issue. In any event, this Court's decision was based primarily on the lack of substantial justification for the Secretary's agency position, and not on the legal position taken by the Secretary in litigation.

3. Finally, defendant contends that this Court erred by finding that the Secretary's position was not solid and well-founded due to the ALJ's failure to expressly state that he was basing his decision on the Dictionary of Occupational Titles ("DOT"). Defendant asserts that the ALJ's decision is only one part of the record to be considered by the Court. Since the DOT was referred to in the initial and reconsideration determinations of plaintiff's claim (*see* D.I. 5A at 53, 57), defendant contends that a sufficient basis existed for the Secretary's final decision.

In brief, the Court would note that in reaching its decision, it was well aware of the two prior determinations. (*See* opinion, D.I. 34 at 15.) The Court simply found that, although the DOT was mentioned in the prior denials of benefits, the agency position as a whole failed to evidence a coherent, solid and well-founded legal theory.