Esther MARCUS, et al., Plaintiffs–Appellees,

v.

Donna E. SHALALA,* Secretary of Health and Human Services, Defendant–Appellant.

No. 92–3038.

United States Court of Appeals, Seventh Circuit.

Argued May 4, 1993.

Decided March 2, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied May 24, 1994.** ***

* Donna E. Shalala has been substituted as appellant for Louis W. Sullivan, M.D. pursuant to Fed.R.App.P. 43(c).

** Spencer Williams, Senior District Judge, was a member of the original panel but took no part in the vote on the suggestion for rehearing en banc.

*** Ripple, District Judge, voted to grant rehearing.

Helen Cropper, John M. Bouman (argued), Robert E. Lehrer, Martha Tonn, Mary E. Kopko, David Yen, Legal Assistance Foundation of Chicago, Chicago, IL, for plaintiffs-appellees.

Donald T. McDougall, Dept. of Health and Human Services, Region V, Office of Gen. Counsel, Chicago, IL, William Kanter, Matthew M. Collette (argued), Dept. of Justice, Civ. Div., Appellate Section, Washington, DC, for defendant-appellant.

Before CUMMINGS and RIPPLE, Circuit Judges, and WILLIAMS, Senior District Judge.****

SPENCER WILLIAMS, Senior District Judge.

Plaintiffs brought this class action and successfully challenged regulations adopted by

**** The Honorable Spencer Williams of the United States District Court for the Northern District of California, sitting by designation.

the Secretary of Health and Human Services governing eligibility for two disability benefit programs under the Social Security Act ("Act"). Subsequently, the district court granted plaintiffs' application for costs and attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). 793 F.Supp. 812. The Secretary appeals the district court's decision to award costs and fees and its decision to adjust the fees upward for inflation. For the reasons expressed below, we affirm in part and reverse in part and remand.

## BACKGROUND

Plaintiffs challenged regulations involving two disability benefits programs under the Social Security Act: one for children under the Supplemental Security Income program of Title XVI of the Act and the other for surviving spouses and divorced spouses of deceased wage earners under 42 U.S.C. § 402 of Title II of the Act. To qualify for disability benefits under these programs, the Secretary's rules and regulations required claimants to show that they had an impairment that was the same as or equivalent to one of the approximately 120 impairments in the Secretary's Listing of Impairments. *See Marcus v. Bowen,* 696 F.Supp. 364, 371–373 (N.D.Ill.1988) (*"Marcus I"*). Claimants who did not meet all of the specified medical criteria for any of the qualifying impairments in the Listing were denied benefits. *Id.* at 372. Although a claimant who did not have an impairment depicted in the listing could show that his impairment or combination of impairments was equivalent to a listed impairment, the overall functional impact of the impairments could not be considered. *Id.* at 373.

Plaintiffs' position in *Marcus I* was that the Secretary's regulations and rulings resulted in the denial of disability benefits to class members without an individualized assessment of a claimant's ability to engage in gainful activity. *Id.* at 367. According to plaintiffs, the statutory scheme required the Secretary to make an individualized assessment of a claimant's impairments, considering the combined impact of all impairments on the claimant's ability to engage in gainful

activity and measuring disability in relation to functional, workplace limitations. *Id.*

The district court granted summary judgment in favor of the plaintiffs, ruling that the statute did not authorize the Secretary to engage in what it described as "cookbook adjudication." *Id.* at 376. The Secretary appealed. While the appeal was pending, the Supreme Court decided the children's program issue favorably for plaintiffs. *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). Consequently, the government withdrew its appeal of the children's issue. This Court affirmed the district court as to the remaining claims in the appeal. *Marcus v. Sullivan,* 926 F.2d 604 (7th Cir. 1991) (*"Marcus II"*). Subsequently, plaintiffs filed an application in the district court for attorney's fees and costs under the Equal Access to Justice Act. The district court granted the application and awarded $252,-797.68 in attorney's fees and $1500.17 in costs.

## DISCUSSION

### I. *The Secretary's Position*

Title 28 U.S.C. § 2412(d)(1)(A) provides:

Except as otherwise provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The Secretary does not dispute that plaintiffs were the prevailing parties. Rather, she contests the district court's determination that the government's position was not substantially justified.

The Secretary attacks the district court's determination on two grounds. First, she argues that the district court applied an incorrect legal standard to determine whether the government's position was substantially justified. Second, the Secretary contends that the government's litigating position was, in fact, substantially justified. As a corollary to her second argument, the Secretary ar-

gues that the district court's distinction between the government's litigation position and the underlying agency conduct was inappropriate.

## A. Legal Standard For Awarding Fees

■ Under the EAJA, the government bears the burden of proving that its position was substantially justified. *Cummings v. Sullivan*, 950 F.2d 492, 495 (7th Cir.1991). The "position of the United States" includes the underlying agency conduct as well as the agency's litigation position. 28 U.S.C. § 2412(d)(2)(D). The EAJA does not define the term "substantially justified." However, the Supreme Court has held that the position of the United States is substantially justified if it is "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988). The *Underwood* Court provided further guidance on this standard, noting that

> ... [A] position can be substantially justified even though it is not correct, and we believe that it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.

*Id.* at 566 n. 2, 108 S.Ct. at 2550 n. 2. In making this determination, it is appropriate for the district court to consider the government's litigating position as well as its prelitigation conduct—the action or inaction that gave rise to the litigation. *Cummings*, 950 F.2d at 496. EAJA fees may be awarded if either the government's prelitigation conduct or its litigation position are not substantially justified. *See McDonald v. Secretary of Health and Human Services*, 884 F.2d 1468, 1476 (1st Cir.1989). However, the district court is to make only one determination for the entire civil action. *Commissioner, INS v. Jean*, 496 U.S. 154, 159, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990). Thus, fees may be awarded in cases where the government's prelitigation conduct was not substantially justified even though its litigating position may have been substantially justified and vice versa. In other words, the fact that the government's litigating position was substantially justified does not necessarily offset prelitigation conduct that was without a reasonable basis.

The Secretary argues that the district court applied the incorrect legal standard in awarding fees. We review this issue *de novo*. *Hadden v. Bowen*, 851 F.2d 1266, 1268 (10th Cir.1988).

In its order awarding fees, the district court began its analysis by citing the *Underwood* reasonable basis test. It also noted that under *Cummings*, the government's position includes both its prelitigation conduct and its litigating position. *Marcus v. Sullivan*, 793 F.Supp. 812, 814 (N.D.Ill.1992) (*"Marcus III"*). In the Secretary's opinion, however, the district court paid lip service to *Underwood* and *Cummings* by following its discussion of those cases and related authority with the statement, "We begin here with the premise that the Secretary's regulations would have been upheld if they had reasonably implemented the statute ..." *Id.* at 815. In the Secretary's opinion, this statement indicates that the district court impermissibly created and relied on a presumption that the regulations would have been upheld had they been substantially justified. The Secretary also argues that there is no case law to support the district court's statement that "it remains the uncommon occurrence where an agency will avoid paying EAJA attorney fees after a judicial determination that its underlying position was arbitrary and capricious." *Id.* According to the Secretary, the district court's language creates a general rule that fees will be awarded unless the agency can show exceptional circumstances, a rule which runs contrary to congressional intent.

We disagree. The district court stated explicitly that there is no presumption that a prevailing party is entitled to fees under the EAJA. *Id.* The premise the district court used in its analysis is an accurate statement of law and fact: the regulations would have been upheld if they had reasonably implemented the statute. Nowhere in its order does the district court suggest that its decision to award fees turned on this fact. Nor does the decision equate loss on the merits with lack of substantial justification. Instead, the decision was based on the cumulative litigation history, a permissible consideration. The Secretary's argument that the district court adopted the general rule enti-

tling prevailing parties to fees in all but exceptional circumstances is based on a contorted reading of the district court's order. It is also an argument based on snippets of the order that the Secretary has taken out of context. When read in its entirety, the district court's order indicates that the district court used the correct legal standard to guide its analysis of the issue.

### B. The District Court's Determination

The Secretary also argues that the district court erred in concluding that the government's position was not substantially justified. According to the Secretary, the district court inappropriately restricted its inquiry to the government's pre-litigation conduct, which was, in fact, substantially justified.

■ The district court's determination as to the Secretary's position is reviewed for abuse of discretion. *Underwood,* 487 U.S. at 562–563, 108 S.Ct. at 2548–2549. Under this standard of review, the district court's determination will not be disturbed on appeal as long as it has a basis in reason. *Pirus v. Bowen,* 869 F.2d 536, 540 (9th Cir.1989). Although this is a deferential standard, this Court's review must be meaningful. *Wilfong v. United States,* 991 F.2d 359, 364 (7th Cir.1993).

The Secretary argues that the district court abused its discretion in its analysis of the Secretary's position with regard to both the children's and spouses' disability policies. As to the children's disability policy, the Secretary points out that before the underlying action was filed, two circuits had already rejected similar challenges, the First Circuit in *Hinckley v. Secretary of Health and Human Services,* 742 F.2d 19 (1st Cir.1984), and the 11th Circuit in *Powell v. Schweiker,* 688 F.2d 1357 (11th Cir.1982). She also notes that while this litigation was pending, several courts either followed or recognized these holdings. *See Wilkinson v. Bowen,* 847 F.2d 660, 661 (11th Cir.1987); *Burnside v. Bowen,* 845 F.2d 587, 590–91 (5th Cir.1988); *Wills v. Secretary of Health and Human Services,* 686 F.Supp. 171, 172 (W.D.Mich.1987); Finally, she notes that no court had invalidated the children's regulations until *Zebley v. Bowen,* 855 F.2d 67 (3rd Cir.1988), *aff'd sub nom. Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990), which the

district court in this case relied on a month later in its order invalidating the regulations. *Marcus I,* 696 F.Supp. at 381. The Secretary argues that the district court impermissibly ignored the string of successes the government had achieved prior to the Third Circuit's decision in *Zebley.* In her opinion, where the government defends a policy that has been upheld by a majority of courts, its position must be substantially justified as a matter of law.

In support of her position with respect to the spouses' disability regulations, the Secretary contends that the disability standard was more restrictive than for children. In the Secretary's opinion, this fact, in combination with the numerous court decisions upholding the children's disability regulations, made it justifiable for the agency to believe that the spouses' program would also be upheld. The Secretary also argues that other courts had indicated support for the regulations in response to challenges. *See Bowen v. Yuckert,* 482 U.S. 137, 149 n. 7, 107 S.Ct. 2287, 2295 n. 7, 96 L.Ed.2d 119 (1987); *Willeford v. Secretary of Health and Human Services,* 824 F.2d 771, 773–774 (9th Cir.1987); *Reynolds v. Secretary of Health and Human Services,* 707 F.2d 927, 929 (6th Cir.1983). The Secretary acknowledges that there was also dicta questioning the regulations, *see Tolany v. Heckler,* 756 F.2d 268, 271–272 (2nd Cir.1985), but asserts that no court had held that the agency was required to conduct an individual functional assessment apart from the Listing of Impairments until after this case was litigated in the district court.

■ We agree that uncertainty in the law arising from conflicting authority or the novelty of the question weighs in the government's favor when analyzing the reasonableness of the government's litigation position. In fact, the district court agreed with the Secretary that based on these factors, her agency's litigation position was substantially justified. However, the EAJA fee inquiry does not necessarily turn on this question alone since the district court may also consider the government's pre-litigation conduct. *Jean,* 496 U.S. at 159, 110 S.Ct. at 2319.

When the Supreme Court invalidated the children's disability regulations it found them "manifestly contrary to the statute" and that the approach had exceeded the Secretary's statutory authority. *Zebley*, 493 U.S. at 541, 110 S.Ct. at 897. The Court also noted that the Secretary's position was "unconvincing," *id.* at 539, 110 S.Ct. at 896, and "make[s] little sense." *Id.* at 541, 110 S.Ct. at 897. Thus, the Court did not even consider the issue to be a close one. Similarly, this Court invalidated the spouses' disability policies, finding that the regulations had "not been contemplated by Congress nor supported by the language of the Act." *Marcus II*, 926 F.2d at 612. In doing so, this Court agreed with six other circuits which had rejected the Secretary's position. *Id.* at 609. The district court relied on this history in its order awarding fees.

The Secretary argues that the district court cannot ignore the substantial case law supporting the regulations when analyzing the agency's pre-litigation conduct. She points out that this case law reveals that the law was unclear and the question was a close one, providing evidence of substantial justification. *Cummings*, 950 F.2d at 498. Finally, she argues that the statutes themselves were ambiguous, and that the policies were longstanding and appeared to have gained congressional acquiescence.

The Supreme Court's language in *Zebley* as to the children's policy and the strong disapproval of the spouses' regulations among circuit courts refutes the Secretary's contention that the questions involved were close ones. Based on this authority, a reasonable person could agree with the district court that the government's position was not substantially justified. The Secretary has invited us to review the district court's decision by engaging in our own comprehensive analysis of the statutes and regulations at issue and the numerous cases she cites. Accepting her invitation, however, would require us to engage in particularized appellate scrutiny, which is to be avoided in reviewing a lower court's decision for abuse of discretion. Since the district court relied on the appropriate standard and its decision has a basis in reason, we cannot conclude that it abused its discretion.

## II. *The Cost of Living Adjustment*

The second issue before us is whether the amount of the fee award was proper. Under the EAJA, the court is authorized to award attorney's fees based on a rate of up to $75 per hour,

> unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii). The district court awarded fees on the basis of a cost of living adjustment indexed at current rates, without regard to when the fees were incurred. That is, it adjusted the $75 per hour statutory rate for the increase in the cost of living that occurred between 1981 (when the EAJA was enacted) and 1992 (when the award was made). It then multiplied the total number of hours plaintiffs claimed in their fee application by the adjusted rate. Thus, the same hourly rate was applied to all hours expended even though the work was performed over a number of years. The court reasoned that such an adjustment was warranted because the delay involved in the case was "truly exceptional" and was, therefore, a special factor. *Marcus III*, 793 F.Supp. at 816.

The Secretary does not argue that the district court erred in applying a cost of living adjustment. Rather, she contests the district court's decision to index the fees at the current cost of living rate because of delay. Whether the EAJA permits such an adjustment to compensate for delay is a question of law which is reviewed *de novo*. See *Hadden*, 851 F.2d at 1268.

According to the Secretary, the district court's method for calculating fees was improper because it was tantamount to an award of prejudgment interest which is precluded under *Library of Congress v. Shaw*, 478 U.S. 310, 314, 106 S.Ct. 2957, 2961, 92 L.Ed.2d 250 (1986). In *Shaw*, the Court observed that an interest rate reflects two separate factors, the real opportunity cost of capital and the inflation rate. *Id.* at 322 n. 7,

106 S.Ct. at 2965 n. 7. The Court held that principles of sovereign immunity generally dictate that neither of these elements may be awarded against the United States, regardless of how the award might be designated. *Id.* at 321–322, 106 S.Ct. at 2965. An exception to this rule allows for such awards where the government has consented. However, because waivers of sovereign immunity are to be strictly construed in favor of the government, the exception is not applicable unless the consent is express and unambiguous. *Id.* at 318, 106 S.Ct. at 2963 (quoting *United States v. N.Y. Rayon Importing Co.,* 329 U.S. 654, 659, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947)). By indexing attorney's fees at current rates, the district court's award included interest. *See In re Continental Illinois Securities Litigation,* 962 F.2d 566, 571 (7th Cir.1992).

Although the EAJA provides for the award of post-judgment interest, 28 U.S.C. § 2412(f), its provision for a cost of living adjustment is not an explicit waiver of sovereign immunity that would authorize a district court to award pre-judgment interest to compensate for delay. *Perales v. Casillas,* 950 F.2d 1066, 1076 (5th Cir.1992); *Chiu v. United States,* 948 F.2d 711, 721–722 (Fed. Cir.1991). Plaintiffs argue that the EAJA's provision for an upward adjustment to compensate for an increase in the cost of living constitutes an explicit waiver of the inflation component of interest. We agree, but only to the extent that the clause serves as the statute's built-in mechanism for automatically updating itself, ensuring that the $75 per hour cap will not be eroded by inflation. *Id.* We reach this conclusion strictly construing the language in favor of the government, as *Shaw* requires. Nothing in the remainder of the EAJA authorizes fees to be indexed at current rates regardless of when they were incurred. *Id.*

Plaintiffs urge us to follow the analysis adopted by the Third Circuit in *Garcia v. Schweiker,* 829 F.2d 396 (3rd Cir.1987). In that case, the court adjusted the $75 rate as of the date of the award, rather than as of the date the fees were incurred, stating, "The agency should not reap the benefits of any inflation during litigation. Similarly, attor-

neys should not have the purchasing power of their fees eroded by such inflation." *Id.* at 402. Since we believe *Shaw* precludes the result reached in *Garcia,* an adjustment for inflation after the date that the fees were incurred is inappropriate.

Plaintiffs also contend that the special factor provision in the EAJA authorizes fee awards indexed at current rates independently of the language authorizing a cost of living adjustment. Both the District of Columbia Circuit and the Third Circuit have recognized in post–*Shaw* cases that delay can constitute a special factor justifying the use of the current indexed rate, but only if it is "unusual" or "truly exceptional." *See Oklahoma Aerotronics, Inc. v. United States,* 943 F.2d 1344, 1350 (D.C.Cir.1991); *Wilkett v. ICC,* 844 F.2d 867, 876–877 (D.C.Cir.1988); *Perales,* 950 F.2d at 1077. In *Oklahoma Aerotronics* the court found that the district court's unexplained failure to act on the plaintiff's fee application for eight years qualified as a special factor. *Id.* at 1350. Similarly, the *Wilkett* court determined that a prevailing plaintiff was entitled to an enhancement for delay after his fee application sat dormant in the clerk's office for almost four years. *Wilkett,* 844 F.2d at 869, 876–877. Although the Fifth Circuit followed these decisions in *Perales,* the court held that the four-year period it took to adjudicate that case did not constitute a special factor given its complexity. *Perales,* 950 F.2d at 1077.

Despite the logical appeal of these cases, their holdings amount to an end run around the no-interest rule in *Shaw* because the statutory provision allowing for a higher fee where there is a special factor is not the kind of express, unambiguous statutory language sufficient to waive sovereign immunity. In addition, to award current rates for delay runs afoul of *Underwood,* in which the Court held that special factors cannot be of "broad and general application." *Underwood,* 487 U.S. at 573, 108 S.Ct. at 2554.

Even if delay could constitute a special factor, the delay in this case was not exceptional given the complexity of the issues. The district court made no finding and plaintiffs do not argue that the Secretary engaged in obstructive litigation tactics or otherwise

protracted the proceedings. In fact, the district court concluded just the opposite and noted that the matter was litigated with "professional distinction."

In summary, we hold that 28 U.S.C. § 2412(d) does not authorize indexing attorney's fees awards at current rates. If a cost of living adjustment is applied, it must be calculated with regard to when the services were performed, not on the basis of when the award is made. Thus, fees incurred in a particular year must be indexed using the cost of living multiplier applicable to that year, and so on for each year in which fees were incurred.

### III. Conclusion

The district court did not abuse its discretion in determining that the government's position was not substantially justified, but erred as a matter of law by indexing its fee award at current rates. We remand for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

RIPPLE, Circuit Judge, dissenting.

I regret that I find myself in respectful disagreement with the majority of this panel. In my view, if the approach adopted in this case endures as the law of the circuit, the government will be placed at a disadvantage in future litigation that was never intended by the Congress and that is contrary to the realities of sound governance.

The majority correctly states that the district court must take into consideration the position of the government with respect to both the underlying agency action and the present litigation. In this case, however, this distinction is without a practical difference. The Secretary's position in this litigation was the same as in the underlying agency action: that the adoption of the children's and the spouses' disability regulations was legally justifiable as a faithful interpretation of congressional intent. The caselaw support for the Secretary's position is relevant to an assessment of the agency's pre-litigation position because it demonstrates that, at the time the agency acted, the law was unclear and that reasonable people, including a significant number of our fellow federal judges, found the agency's position to be a reasonable one.

With respect to the regulations governing children's disability, the Supreme Court of the United States eventually determined that the agency's position was erroneous. See Sullivan v. Zebley, 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). Nevertheless, in the course of its decision, the Court acknowledged that several circuits had previously held that the regulations were valid. Id. at 527 n. 5., 110 S.Ct. at 890 n. 5. It is indeed difficult to justify, as the majority seems in large part to do, the imposition of a quarter of a million dollars in attorneys' fees on the rhetorical style of the author of the Supreme Court opinion. The regulations governing spouses also were supported after their enactment by respectable judicial authority.[1]

Because the legal position initially adopted by the Secretary in the promulgation of the regulations was determined to be a reasonable one when initially scrutinized in judicial proceedings, I do not believe that it is consonant with the congressional intent to interpret the Equal Access to Justice Act as permitting the award of fees in this case. Accordingly, I respectfully dissent.

---

1. Indeed, the district court acknowledged that the position it took in this litigation was contrary to an earlier interpretation it had articulated, albeit in dicta. See Marcus v. Bowen, 696 F.Supp. 364, 380 n. 21 (N.D.Ill.1988).