Raleigh SUTTON, Plaintiff,

v.

Shirley S. CHATER, Commissioner
of Social Security, Defendant.

No. 95 C 1766.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 15, 1996.

Ashley S. Rose, Law Offices of Ashley S. Rose, Glen Ellyn, IL, for plaintiff.

Ann L. Wallace, United States Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Raleigh Sutton applied to the Commissioner of Social Security for disability insurance benefits. The Commissioner denied his application, so Sutton filed suit in federal district court seeking review of the Commissioner's final decision. The parties consented to have their case heard by Magistrate Judge Keys, before whom both parties moved for summary judgment.

The magistrate judge denied the Commissioner's motion, but granted in part Sutton's motion for summary judgment, and remanded the case to the Commissioner for further proceedings. However, the magistrate judge denied Sutton's request for attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. Sutton appealed to this court from the magistrate judge's denial of attorney's fees. This court has jurisdiction over Sutton's appeal pursuant to

28 U.S.C. § 636(c)(4). *See also* FED.R.CIV.P. 73(d).

## I. DISCUSSION

### A. Equal Access to Justice Act

The EAJA requires a court to award fees and other expenses to a prevailing party in litigation against the United States, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A). Under the EAJA, the government bears the burden of proving that its position was substantially justified. *Marcus v. Shalala,* 17 F.3d 1033, 1036 (7th Cir.1994) (citing *Cummings v. Sullivan,* 950 F.2d 492, 495 (7th Cir.1991)).

The United States' position is substantially justified if it is "'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Marcus,* 17 F.3d at 1036 (quoting *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)). Moreover, "'... [a] position can be substantially justified even though it is not correct, and we believe that it can be substantially justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Marcus,* 17 F.3d at 1036 (quoting *Pierce,* 487 U.S. at 566 n. 2, 108 S.Ct. at 2550 n. 2).

The "position of the United States" includes the underlying agency action as well as the agency's litigation position. *Marcus,* 17 F.3d at 1036 (citing 28 U.S.C. § 2412(d)(2)(D)). Thus, in making its determination whether or not to award fees and expenses to the prevailing party, the court considers both "the government's litigating position as well as its prelitigation conduct—the action or inaction that gave rise to the litigation." *Marcus,* 17 F.3d at 1036 (citing *Cummings,* 950 F.2d at 496).

The court may award EAJA fees if either the government's prelitigation conduct or its litigation position is not substantially justified. *Marcus,* 17 F.3d at 1036 (citing *McDonald v. Secretary of Health and Human Services,* 884 F.2d 1468, 1476 (1st Cir.1989)). However, the court makes only one determination for the entire action, encompassing both the prelitigation and litigation conduct of the government. *Marcus,* 17 F.3d at 1036 (citing *Comm'r, Immigration and Naturalization Serv. v. Jean,* 496 U.S. 154, 159, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990)). A decision by an administrative law judge is part of the agency's prelitigation conduct. *Cummings,* 950 F.2d at 497.

In this case, the magistrate judge did not discuss the foregoing law or fully explain why he chose not to award fees to Sutton under the EAJA. The magistrate judge stated:

> Notwithstanding the findings above [remanding the case to the administrative law judge who denied disability benefits to Sutton], the Court finds that the Commissioner's position was substantially justified. It is quite possible that, upon remand, the [administrative law judge] could arrive at the same conclusion after further proceedings in accordance with the Court's directives. Plaintiff's request for attorneys' fees is denied.

*Raleigh v. Sutton,* Slip.Op. at 18 n. 8, 1996 WL 89090 (N.D.Ill. Feb. 27, 1996).

On appeal, Sutton argues that the administrative law judge's decision was not substantially justified, and therefore that the magistrate judge erred in denying Sutton's request for attorney's fees. This court reviews the magistrate judge's decision denying EAJA fees to Sutton for an abuse of discretion. *See Pierce,* 487 U.S. at 571, 108 S.Ct. at 2553; *Young v. Sullivan,* 972 F.2d 830, 835 (7th Cir.1992).

### B. Factual record and decisions below

Since the parties agree that Sutton was a prevailing party under the EAJA, the only question before the court is whether the magistrate judge abused his discretion in determining that the Commissioner's position in Sutton's case was substantially justified. Consequently, the law and facts underlying both the Commissioner's and magistrate judge's decisions are important on appeal, and the court will set them out in a fair amount of detail here.

On August 12, 1992, Sutton applied for disability insurance benefits, alleging that he

had been unable to work since April 1, 1992, because of his disability, which included depression, memory loss, heart problems, and dizziness. The Commissioner denied Sutton's application on March 4, 1993. On Sutton's request for reconsideration, the Commissioner determined that Sutton's medical records showed that he was disabled since January 1, 1991. However, the Commissioner found that Sutton did not have enough work credits as of January 1, 1991, to qualify him to receive disability benefits. Disagreeing with this determination, Sutton filed a request for a hearing. On July 1, 1994, Sutton received a hearing before an administrative law judge (ALJ). The following information is taken from Sutton's testimony at the hearing.[1]

From 1978 until 1981, Sutton was owner, then part owner, of a stamp and coin shop. In 1979, Sutton was in a car accident in which he received severe head injuries. He could not work more than one or two hours a day in his business for a period of time following his accident.

From August 1981 to April 1982, Sutton worked as a project leader for a data processing consulting company. Sutton had no problems on the job, and left it after the company went out of business. For about a year or year and a half in 1983 and 1984, Sutton was part owner of another stamp and coin shop. Then he started having depression problems and hallucinations, and left the job.

Sutton apparently did not work from 1984 to 1986. From August 1986 to June 1988, Sutton worked for an art and paint supply company. He left that job for the same reasons as the previous one—he started stressing out and getting hostile, and quit. Sutton did not work from June 1988 through October 1990, and applied for Social Security disability benefits during that time.

Starting in November 1990, Sutton worked as a volunteer at a group home for people with disabilities. In 1991, Sutton was hired by the group home to work 20 hours per week as a secretary/receptionist; he also taught residents with mental disabilities how to use a computer. Sutton had no problems with the work until early 1992, when he began having his "usual problems." He started getting stressed. out, and "started getting stupid and misfiling things and not getting along with people." Sutton left the job in April 1992.

The group home was Sutton's last employer. After he left there, he volunteered at a library for one or two hours a week and delivered books to nursing homes once a month, but had to give both up because he began having depression problems again.

Sutton has no physical problems but has mental problems that prevent him from working. He runs out of steam, gets stressed out, starts hallucinating, gets hostile, and cannot get out of bed. He attributes these problems to his depression. He also gets dizzy spells, which he attributes to his car accident.

Sutton sleeps a lot, cleans the house and does yardwork, and works on his word processor, writing letters and stories for collector's journals. Sutton has problems with his memory, and must write everything down on notes so he does not forget things. Sutton's depression episodes are cyclical—about two years bad and two years worse. During his severe bouts of depression, Sutton is unable to get along with anyone. Sutton's depression episodes are getting worse each time, and getting harder for him to come out of.

Sutton attributes his mental problems to two things. First, Sutton received some brain damage in the car accident, and the brain damage causes recurring problems when Sutton gets stressed out. Second, Sutton experiences two-year cycles of depression. When he suffers from both of these problems together, his symptoms are intensified.

At the close of the hearing, Sutton's counsel stated that there was some question about when Sutton first became disabled. Counsel stated that April 1992 was the likely date. Subsequent to the hearing, Sutton's counsel filed an additional brief and exhibits in which he conceded that Sutton was insured for disability benefits no later than

1. *See* Certified Administrative Record at 211–233.

December 31, 1989, and that Sutton must have been disabled as of that date to be eligible for disability benefits.

The following information is based on Sutton's medical records.[2] Sutton was treated at the Ecker Center for Mental Health from 1985 through 1990. In March 1985, Dr. L. Kerns diagnosed Sutton as having a chronic depressive disorder and prescribed psychotherapy and anti-depressants. Dr. Kerns saw Sutton almost monthly through May 1989. From March to October 1986, Dr. Kerns noted that Sutton seemed to be doing well, and his depression seemed to be under control.

In November 1986, Dr. Kerns noted that Sutton was a little more depressed but quite a bit more anxious than usual, because of increasing tension at work. Dr. Kerns prescribed an additional medication for Sutton's anxiety. In December 1986, Dr. Kerns noted that Sutton had experienced a few stressful weeks because his favorite aunt had died, but that the medication was controlling his anxiety.

In March 1988,[3] Dr. Kerns noted that Sutton was doing well, with no depressive symptoms, and was much more relaxed since he quit his job. In July 1988, Dr. Kerns noted that Sutton was doing well but was having more trouble with stress. In September 1988, Dr. Kerns noted that Sutton was doing well but was worried about his weight gain from the antidepressant. In October 1988, Dr. Kerns noted that Sutton was under a lot of stress applying for disability benefits and visiting his mother in Texas. In December 1988, Dr. Kerns noted that Sutton was disappointed that he did not get disability benefits, but otherwise was doing fairly well.

In May 1989, Dr. Kerns noted that Sutton was doing relatively well, had gone off his medication, and had no major depressive symptoms. Sutton then was transferred to the care of Dr. B. Franklin.

In September 1989, Dr. Franklin noted that Sutton had scheduled an appointment with him because for the past two months Sutton had become depressed. Dr. Franklin noted that Sutton recently had given up his stock job at the art and supply company because he could not concentrate adequately, had little energy, and was not sleeping well; and that Sutton again had become short-tempered, impatient, and fearful of going to places simply because he did not feel well. Dr. Franklin noted that Sutton has probably always had a chronic stress problem. He also noted that Sutton looked mildly depressed.

In October 1989, Dr. Franklin noted that Sutton had improved on medication; he was less irritable, and was reading and writing and had two articles published in magazines. However, Sutton still found himself with little energy or motivation, and still suffered from poor memory. In December 1989, Dr. Franklin noted that Sutton was stable and his characteristic self. Dr. Franklin noted that the Christmas season depressed Sutton more, but that the medication helped. Dr. Franklin noted that Sutton's memory and concentration were the same, not what Sutton would like them to be.

In January 1990, Dr. Franklin noted that Sutton was demoralized and looked more depressed than usual, and was unable to follow through on anything, including his personal interests. Dr. Franklin noted that he suggested psychotherapy for Sutton. In February 1990, Dr. Franklin noted that Sutton was more irritable than usual and looked more depressed than usual. In March 1990, Dr. Franklin noted that Sutton was stable and hopeful. He noted that Sutton was again looking for work. In September and December 1990, Sutton was more depressed than usual.

In January 1991, Sutton began seeing Dr. Michael Shapiro. Through at least June 1993, Dr. Shapiro saw Sutton monthly and treated Sutton's major depression with psychotropic medications. Dr. Shapiro described Sutton as being depressed, with negative thinking, mild confusion, and difficulty in organizing and remembering tasks. Dr.

---

**2.** *See* Certified Administrative Record at 139–41, 161–63, and 180–206.

**3.** Dr. Kerns' treatment notes from January 1987 through February 1988 are missing from the administrative record.

Shapiro stated that Sutton was hostile and volatile at times when he was depressed. Because of Sutton's irritability, difficulty in learning, and difficulty in taking orders, Dr. Shapiro rated Sutton as poor with respect to Sutton's ability to do work-related activities such as understanding, remembering, and carrying out instructions.

Two government-designated psychological consultants, neither of whom examined or treated Sutton, also rendered opinions in this case.[4] One consultant, Dr. Paul M. Cadwell, had the opinion that Sutton had no medically determinable mental impairment; the other, Dr. Carl Hermsmeyer, found that as of August 5, 1993, Sutton had a major depressive disorder that met a listed impairment, and therefore that Sutton was disabled as of that date. Neither consultant found that Sutton was disabled as of December 31, 1989. However, neither Sutton's counsel nor the Commissioner had Sutton's medical records from his treatment by Dr. Kerns and Dr. Franklin until after the close of the hearing before the ALJ. Thus, the consultants apparently based their opinions on their review of Dr. Shapiro's notes, but without the benefit of Dr. Kerns' and Dr. Franklin's treatment notes.

After holding the hearing and receiving all of the evidence presented by the parties, the ALJ applied the sequential evaluation process prescribed by the Social Security regulations for determining whether a claimant is disabled.[5] *See* 20 C.F.R. § 416.920 (1994). Under this test, the ALJ considered: (1) whether Sutton presently was unemployed or not engaged in substantial gainful activity; (2) whether Sutton had a severe impairment or combination of impairments; (3) whether Sutton's impairment or combination of impairments met or equalled any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether Sutton's impairment or combination of impairments prevented him from performing his past relevant work; and (5) whether Sutton's impairment or combination of impairments prevented him from performing any other work existing in significant numbers in the national economy.[6]

The ALJ found that Sutton satisfied steps one, two, and four, but failed to satisfy steps three and five. The ALJ found that as of the date he was last insured, Sutton could perform light work that was not performed at heights or around dangerous machinery, and that did not require Sutton to work closely with co-workers or the public. The ALJ also found that Sutton exaggerated his complaints of pain and functional limitations through December 31, 1989. The ALJ noted that Sutton had worked part-time from early 1989 through 1992 at the group home. While the ALJ found that this was not substantial gainful activity, he found that it was indicative of Sutton's ability to do at least unskilled work mentally.

The ALJ also found that Sutton was able to take care of himself at home, and could use a word processor to write stories and letters. The ALJ noted that in May 1989, Dr. Kerns found Sutton well enough to be taken off medication, and that in September 1989, Dr. Franklin described Sutton as mildly depressed. The ALJ found that Sutton's mental state was worsening, but that this occurred after the date on which he was last insured for disability benefits.

The ALJ then applied the Medical–Vocational Guidelines, or "grid," *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1994), and found that according to the grid, Sutton was not disabled at any time through December 31, 1989. The ALJ concluded that while Sutton could not be expected to perform the full range of light work because of his non-exertional impairments, he could perform a significant number of jobs, such as inspector, light assembler, watchman/security guard, or

---

4. *See* Certified Administrative Record at 94–113.

5. *See* Certified Administrative Record at 11–20.

6. A negative answer at any step, except step three, precludes a finding of disability. An affirmative answer at step one, two, or four leads to the next step. An affirmative answer at step three or five results in a finding of disability. *Young v. Secretary of Health and Human Serv.,* 957 F.2d 386, 389 (7th Cir.1992) (citing 20 C.F.R. § 404.1520 (1991); *Bowen v. Yuckert,* 482 U.S. 137, 140–42, 107 S.Ct. 2287, 2290–92, 96 L.Ed.2d 119 (1987); *Arbogast v. Bowen,* 860 F.2d 1400, 1402 (7th Cir.1988)).

cashier. The ALJ therefore denied disability insurance benefits to Sutton.

On review of the ALJ's decision, the magistrate judge found that the ALJ correctly found that Sutton satisfied steps one, two, and four, and failed to satisfy step three. However, the magistrate judge found that the ALJ incorrectly found at step five that Sutton was capable of performing work that exists in significant numbers in the national economy. Citing *Walker v. Bowen*, 834 F.2d 635, 640–41 (7th Cir.1987), the magistrate judge noted that use of the grid may be inappropriate if the claimant suffers from severe non-exertional impairments that would prevent the claimant from performing the work indicated by the grid. The magistrate judge found that the ALJ, while finding Sutton's mental impairments severe, did not adequately explain why he found that they would have imposed only minimal restrictions on Sutton's ability to engage in work-related activities.

The magistrate judge also found the ALJ's reliance on the fact that Sutton was able to work 20 hours a week from 1989 through 1992 misplaced. The magistrate judge found that the ALJ did not give enough credit to Sutton's testimony that his bouts of depression were cyclical, and that he could not work much or at all during his bouts. The magistrate judge noted that Sutton's testimony was consistent with the treatment notes of Dr. Kerns and Dr. Franklin. The magistrate judge stated that based on the medical records, especially those covering the period from late 1989 to early 1990, he could not glean a basis for the ALJ's decision that Sutton's mental impairments prior to December 31, 1989, did not impose significant restrictions upon Sutton's ability to work on a full-time basis.

The magistrate judge also noted that the non-treating consultants on whose opinions the ALJ relied did not base their opinions on the treatment notes of Dr. Kerns and Dr. Franklin. The magistrate judge found that upon the ALJ's receipt of these treatment notes, the ALJ should have forwarded them to the consultants, rather than making his findings based on his own interpretation of the notes.

Thus, the magistrate judge concluded that the ALJ's finding that Sutton's impairments would not have prevented him from performing a substantial number of jobs existing in the economy on December 31, 1989, was not supported by substantial evidence. However, the magistrate judge also concluded that the ALJ's opinion was not so faulty as to require outright reversal. The magistrate judge remanded the case to the ALJ, with instructions for the ALJ first to determine the nature and extent of Sutton's non-exertional impairments during the relevant time period, and then to determine whether those impairments would have significantly diminished the employment opportunities otherwise available to Sutton.

Notwithstanding his determination that the ALJ's decision was not supported by substantial evidence, the magistrate judge denied Sutton's request for attorney's fees under the EAJA, finding the Commissioner's position substantially justified.

### C. *Whether the ALJ's decision was substantially justified*

On appeal, Sutton contends that the ALJ erred in that he failed to articulate the factual basis for his decision that Sutton's impairments, even though severe, would only minimally affect Sutton's ability to perform work-related duties; failed to develop a full and fair record; imputed greater weight to non-examining physicians' opinions than to the conclusions of Sutton's own examining physicians; and used the Medical–Vocational Guidelines without legal justification. For the most part, the court agrees.

■ The ALJ's failure to explain fully the factual basis for his decision does not necessarily render his decision not substantially justified. *See Stein v. Sullivan*, 966 F.2d 317, 320 (7th Cir.1992). However, not having an adequate factual basis for a decision would be unreasonable and would render the decision not substantially justified. Thus, the more important question is whether the ALJ had a sufficient factual basis for his decision. The court finds that he did not.

The ALJ based his decision in part on his finding that Dr. Franklin, in September 1989,

described Sutton as only mildly depressed and prescribed Prozac. The ALJ thus found that the record failed to show a significantly limiting medical disorder, or an impairment that met or equalled an impairment listed in Social Security regulations. However, the ALJ disregarded the portion of Dr. Franklin's September 1989 treatment notes in which Dr. Franklin stated that Sutton had been depressed for two months; recently had given up his job because he could not concentrate, had little energy, and was not sleeping well; and had become short-tempered, impatient, and fearful of going out simply because he did not feel well.

The ALJ also disregarded Dr. Franklin's treatment notes from October 1989 that Sutton had improved on Prozac but still had little energy or motivation and still suffered from poor memory. The ALJ failed to consider Dr. Franklin's treatment notes from December 1989, that Sutton was stable and his characteristic self, but that Christmas season depressed him more, and that Sutton's memory and concentration remained poor. These portions of the record, which the ALJ did not take into account in reaching his decision, support Sutton's claim that he was unable to work because of his depression.

The ALJ then stated that if a claimant has more than one impairment, but none that meets or equals a listed impairment, he is required to consider whether the combination of impairments equals a listed impairment. When making this determination, the ALJ is required to consider the opinions of medical or psychological consultants designated by the Secretary of Health and Human Services. The ALJ stated that the designated consulting physicians reviewed the medical evidence and concluded that the combination of Sutton's impairments did not equal a listed impairment. Based on the consultants' opinions, the ALJ also concluded that the combination of Sutton's impairments did not equal a. listed impairment. Had the ALJ concluded that the combination of Sutton's impairments met or equalled a listed impairment, he would have found Sutton disabled at step three. *See* 20 C.F.R. § 416.920(d) (1994).

The defect in the ALJ's conclusion is that the consultants did not have Dr. Kerns' and Dr. Franklin's treatment notes, which covered the period prior to and including December 31, 1989. Consequently, the only psychological evidence on which the consultants based their opinions covered a period of time subsequent to the last date on which Sutton had to be disabled to be covered for disability benefits. In other words, the consultants based their opinions on evidence not relevant to the determination that the ALJ was required to make—whether Sutton was disabled on or before December 31, 1989. The ALJ based his decision on these flawed opinions.

Later in his opinion, in determining Sutton's ability to perform basic work-related activities on a regular and continuing basis despite his impairments, the ALJ stated that the record indicated that as of December 31, 1989, Sutton could do light work provided that it was not performed at heights or around dangerous machinery and did not involve working closely with coworkers or the public. The ALJ gave no factual basis for this finding. Moreover, from this court's examination of the record that was before the ALJ, this court finds no evidence that Sutton could perform the work suggested by the ALJ. Sutton consistently testified that he was unable to hold a continuous and full-time job because of his depression. The medical records tend to support that contention.

The ALJ also found that the record suggested that Sutton exaggerated his complaints of pain and functional limitation, and on this basis was not a credible witness. The ALJ based his credibility finding, in part, on the purported fact that although Sutton was alleging disability as of December 31, 1989, he worked part-time at the group home from early 1989 until April 1992. The ALJ found this work indicative of Sutton's ability to do at least unskilled work mentally.

The ALJ's factual finding is patently incorrect. Sutton testified that he quit his job at the art and supply company in June 1988 because he was unable to handle the stress of the job. Somewhat inconsistently with Sutton's testimony, Dr. Franklin's treatment

notes indicated that Sutton left the art and supply company job in the summer of 1989, and Dr. Kerns' notes indicated that Sutton left one of his jobs in or shortly before March 1988. Despite this discrepancy in the dates, however, it appears clear that Sutton was unemployed on December 31, 1989, the date by which he alleges he was disabled, and remained unemployed until November 1990. Thus, the ALJ's reason for his assumption that Sutton could do at least unskilled work mentally as of December 31, 1989, was factually incorrect. If anything, Sutton's lack of employment at the relevant time period supports his claim that he was unable to work because of his mental problems.

The ALJ also found that Sutton's testimony indicated a worsening mental state, but that the worsening occurred well after his date last insured. However, as the magistrate judge noted, Sutton testified that his depression runs in cycles, during which his condition becomes worse, then gets better, then worsens again, and so on. The ALJ, by finding that Sutton's condition got worse only after the date on which Sutton was last insured, disregarded Sutton's testimony, which was supported by Dr. Kerns' and Dr. Franklin's treatment notes, that the cyclical worsening and improving was characteristic of his depression problem.

Finally, the court notes that the Commissioner bore the burden of proof at step five to show that Sutton was capable of performing other work existing in significant numbers in the national economy. *See, e.g., Walker,* 834 F.2d at 640. The ALJ articulated no basis for his decision to use the grid, rather than consult a vocational expert or use other means to make the determination at step five. As the court noted above, the failure to articulate a basis for a decision does not necessarily make the decision unjustified. *See Stein,* 966 F.2d at 320. However, at step five, where the government bore the burden of proving Sutton not disabled, the court finds that the ALJ's failure to set forth the basis for his using the grid was unreasonable.

■ Further, as the magistrate judge noted, the ALJ's use of the grid at step five may have been inappropriate, in light of the ALJ's finding that Sutton's emotional problems were so severe that he was unable to perform any of his past jobs. Use of the grid may be inappropriate if the claimant suffers from severe non-exertional impairments that prevent the claimant from performing the work indicated by grid. *Walker,* 834 F.2d at 640–41. In deciding whether or not to use the grid, "the ALJ must determine whether the claimant's non-exertional impairments are severe enough to limit the abilities of the claimant substantially." *Id.* at 641.

While finding that Sutton's mental problems were sufficiently severe to preclude him from performing his past jobs, the ALJ apparently found that they were not so severe as to preclude Sutton from performing other work on a full-time basis. However, the ALJ did not explain why this was so. The court agrees with the magistrate judge that the record does not appear to support such a finding. In fact, Sutton's testimony unequivocally indicated that Sutton was unable to keep even a part-time job at any skill level for very long, because his mental problems eventually would overcome him. Moreover, if the ALJ based his finding on the consultants' flawed opinions regarding Sutton's disability or his erroneous finding that Sutton was employed on December 31, 1989, the ALJ's determination to use the grid clearly is not supported by substantial evidence and does not have a reasonable basis in fact.

■ The ALJ, on behalf of the Commissioner, was responsible for developing the record at Sutton's administrative hearing and substantiating his decision, particularly at step five, that Sutton was not disabled. The ALJ failed to develop the record in a way that would support his decision that Sutton failed to meet the requirements of steps three and five and therefore was not disabled. Consequently, the ALJ's decision did not have a reasonable basis in fact. For this reason, the ALJ's, and therefore the Commissioner's, position during the pre-litigation proceedings was not substantially justified.

In finding otherwise, the magistrate judge abused his discretion. While the court commends the magistrate judge's thorough analysis of the ALJ's opinion and agrees with the

magistrate judge's decision to remand the case to the ALJ for further proceedings, the court finds that the magistrate judge underestimated the gravity of the ALJ's errors.

In particular, the magistrate judge did not note the ALJ's mistake of fact, partly on which the ALJ based his finding that Sutton could perform some unskilled work, that Sutton was employed at the time he was alleging disability. Furthermore, the magistrate judge found that the ALJ's failure to proffer the treatment notes of Dr. Kerns and Dr. Franklin to the consultants to be error, but not reversible error, and not error enough to render the ALJ's decision not substantially justified. The court finds both of these errors significant and substantial, and together with the ALJ's other errors, enough to render the ALJ's decision not substantially justified.

## II. *CONCLUSION*

The court finds that the magistrate judge abused his discretion in holding that the Commissioner's position was substantially justified and therefore that Sutton was not entitled to costs and fees under the EAJA. Accordingly, the court reverses the decision of the magistrate judge denying Sutton's request for attorney's fees, and remands the case to the magistrate judge to enter an award of attorney's fees to Sutton pursuant to the provisions of the EAJA.